UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re: AMALIO CARDOZA and
GLORIA CARDOZA,

    Debtors.

No. 7-18-12654 JA

ADRIANNE ANAYA,

    Plaintiff,

v.

Adversary No. 19-1002 J

AMALIO CARDOZA and GLORIA CARDOZA,

    Defendants.

## MEMORANDUM OPINION

After animal welfare issued notices of determination of dangerous dog for Defendants' dogs, Daisy and Oden, Daisy got out of Defendants' fenced front yard and bit Plaintiff Adrianne Anaya, causing Plaintiff to fall and injure her leg. Pre-petition, Plaintiff sued the Defendants for personal injury and obtained a default judgment against the Defendants. Plaintiff now seeks to have the judgment declared non-dischargeable under 11 U.S.C. § 523(a)(6)[1] based on willful and malicious injury. The Court held a trial on the merits on February 13, 2020 and took the matter under advisement. Because the evidence fails to show that Defendants believed their failure to properly secure their dogs behind a gated fence was substantially certain to cause Plaintiff her particularized injury, Plaintiff has not satisfied all elements necessary to establish a willful and malicious injury under § 523(a)(6). The debt is, therefore, dischargeable.

---

[1] All future statutory references in this Memorandum Opinion are to title 11 of the United States Code, unless otherwise noted.

## FINDINGS OF FACT

Plaintiff Adrianne Anaya lives next door to Defendants Amalio Cardoza and Gloria Cardoza (together, the Cardozas) in a mobile home park. The Cardozas' daughter, who is also named Gloria Cardoza ("Daughter"), lives with the Cardozas. Ms. Anaya has lived at the mobile home park for twenty years. The Cardozas and Daughter moved in approximately seven years ago. At that time, they had one dog, Daisy. Daughter later got another dog, Oden. Both dogs are German shepherds. Daisy was twelve years old in 2016, and Oden was a year and a half. Oden was kept in a kennel at night. Daisy was an outside dog. Ms. Anaya also owns some dogs: English bulldogs that she keeps inside, and an outside dog. She also owned a cat.

Ms. Anaya began having trouble with the Cardozas' and Daughter's dogs sometime after they moved in. Daisy and Oden would go to the fence and bark at Ms. Anaya's dog. Daisy and Oden would habitually get out of the Cardozas' yard. Ms. Anaya was afraid of Daisy and Oden. She sometimes had a problem leaving her house because the Cardozas' dogs would be there. The dogs would also chase Ms. Anaya's cat around the yard. Ms. Anaya believes the dogs eventually killed her cat. Neither the Cardozas nor Daughter were aware that either dog killed the cat. Ms. Anaya talked to the Cardozas' son, Andrew, to complain about the Cardozas' dogs and ask that the gate be kept closed, but nothing changed. Ms. Anaya never talked to the Cardozas or Daughter about the dogs or the dogs' behavior.

Ms. Anaya took three short videos of Daisy and Oden running down the sidewalk outside of the Cardozas' fence. In one video, one of the dogs barks and does not look particularly friendly, though the dog is wagging its tail, and eventually retreats to its own yard. A second video shows two dogs running down the sidewalk. In the third video, one of the dogs barks from the edge of the fence just off of Ms. Anaya's driveway. The dog approaches a security person

from the mobile home park and barks; the security person then closes the gate after the dog goes back inside the yard. Tail wagging by dogs can convey varying messages. The Court reaches no conclusion about the significance of the tail wagging in the videos.

Eventually, Ms. Anaya complained about the Cardozas' and Daughter's dogs to the property manager at the mobile home park. A security person from the mobile home park who came to investigate was able to get the dogs to go back into their yard. The mobile home park manager called the Cardozas into the office to tell them they needed to keep the gate closed and the dogs confined to the back yard. The Cardozas did not keep Daisy and Oden confined to their backyard, but instead kept them in the front yard with a gated fence.

After that, the situation did not improve. Daisy and Oden would continue to get out of the yard, bark at Ms. Anaya, and act aggressively towards her. Ms. Anaya called animal welfare to address the problem. When animal welfare came to the property, the dogs were outside the fence. As a result of the visit from animal welfare, the City of Albuquerque filed a Criminal Complaint against Daughter in Metropolitan Court on June 10, 2016. *See* Exhibit A. The Criminal Complaint alleged that Daughter

> Ha[s] in her possession two dogs by the names of Oden and Daisy. Upon arrival to a call of dogs owned by the defendant being loose and possible attacking an individual. Upon arrival, Animal Welfare Officer did witness the dog Daisy off property and acting aggressively to another animal, and the defendant did remove the dog to her property. Upon investigation it was found that both dogs were not licensed in the City of Albuquerque.

Exhibit A.

Daughter attended a hearing before the Metropolitan Court, showed proof that Oden and Daisy had been chipped, vaccinated, and licensed, and, as a result, the Criminal Complaint was dismissed. *See* Order Dismissing Criminal Complaint – Exhibit C. Neither Mr. Cardoza nor Mrs. Cardoza attended that hearing.

After the visit from animal welfare, the Cardozas attempted to secure the gate with a wire. The Cardozas did not install a lock, a secure latch, or a chain. Daisy and Oden continued to get out of the Cardozas' fenced yard. Mr. Cardoza testified that he was not aware that the dogs were getting out because he is the first to leave home for work in the morning and does not know what happens after he leaves. Similarly, Daughter testified that she always made sure the gate was securely closed when she left the property, and cannot be held responsible for what someone else may forget to do. Mrs. Cardoza likewise testified that she was not aware that dogs continued to get out of the fence after the Cardozas added the wire closure. When Mrs. Cardoza returned home from work each day at about three or four in the afternoon, the dogs were inside her yard. Mrs. Cardoza supposed that Oden likely put his paws on the gate so the gate would eventually open. The Court finds that the testimony of Mr. and Mrs. Cardoza and Daughter that they were generally unaware that Daisy and Oden continued to escape through the fence after the Cardozas added the wire was not credible.

At some point animal welfare spoke to the Mr. and/or Mrs. Cardoza about the problems with Oden and Daisy. The Cardozas had put Oden on a chain to keep him in the yard, but animal control informed the Cardozas that they could not keep the dog chained up. After that, Mrs. Cardoza told her family to make sure to keep the fence secured with the wire on the gate.

The problems continued. Ms. Anaya called animal welfare a second time. As a result, on September 22, 2016, the City of Albuquerque Animal Welfare Department issued a Notice of Dangerous Dog Determination/Irresponsible Owner for both Daisy and Oden. *See* Exhibit D,

Exhibit 15, and Exhibit 16. The Notice of Dangerous Dog Determination/Irresponsible Owner makes the following finding with respect to Oden:

> Dog previously deemed potentially dangerous and has been reported to have been off owner's property and acting aggressively. Dog was witnessed by officer tethered in property by officer and aggressively running into a poorly secured gate.

Exhibit 15.

The Notice of Dangerous Dog Determination/Irresponsible Owner makes the following finding with respect to Daisy:

> Dog previously deemed potentially dangerous and was reported as being loose and acting aggressively and video of the dog off property was provided. While present, dog was witnessed breaking barrier by sticking entire head through a gap in the fence.

Exhibit 16.

Mrs. Cardoza and Mr. Cardoza denied having seen the Notices of Dangerous Dog Determination/Irresponsible Owner at the time they were issued. Daughter is unclear whether she picked up the Notices of Dangerous Dog Determination/Irresponsible Owner from animal welfare, and is not sure whether she received them in the mail. Nevertheless, Daughter, with the help of her brother, Andrew, filed notices of appeal of the dangerous dog/irresponsible owner determinations with the City of Albuquerque on September 27, 2016. *See* Exhibits 17-1 and 17-2. Mrs. Cardoza does not believe she saw the notices of appeal. The notices of appeal included a request for hearing. *Id.* The notices stated the following:

> Judge dismissed case and no further action was required. As far as I am aware my dog has not been out of my property or attacked anybody.

Exhibit 17-1

> Case was dismissed and no further action was needed, as far as I am aware my dog has not been out of the property or attacked anybody.

-5-

Exhibit 17-2.

On September 28, 2016, the City of Albuquerque sent a Notice of Hearing on the Animal Welfare Appeal in the Matter of "Daisy & Oden" owned by Gloria Cardoza. *See* Exhibit 18. The Notice of Hearing was sent by certified mail to "Gloria Cardoza," but there is no indication on the receipt that any of the Cardozas received the Notice of Hearing. *Id.* Mr. Cardoza, Mrs. Cardoza, and Daughter denied having received the Notice of Hearing. The Notice of Hearing scheduled a hearing on the appeal for October 25, 2016. *Id.*

Neither the Cardozas nor Daughter appeared at the appeal hearing. The family went to Mexico to attend a cousin's wedding. At the appeal hearing, the hearing officer upheld the dangerous dog determination for Daisy and Oden, finding that the notice was the second reported offense, and upheld the irresponsible owner determination. *See* Order – Exhibit 19. The property manager attended the hearing and stated on the record that the dogs will not be allowed to stay on the property. Ms. Cardoza testified that she never saw the Order. Daughter acknowledged that the received the Order. Mr. Carzdoza understood that the irresponsible owner determination required him to obtain an insurance policy. He did not purchase an insurance policy even though he knew about the requirement.

On January 1, 2017, Daisy got out of the Cardozas' yard, ran over to Ms. Anaya's property, and bit Ms. Anaya on the behind, causing Ms. Anaya to fall and hurt her leg. The dog bite did not break the skin. On January 5, 2017, Ms. Anaya sought medical treatment for an injury to her left leg due to the fall. Ms. Anaya suffers from several other health issues, unrelated to the incident with Daisy, for which she seeks periodic medical care. *See* Exhibit 24. Ms. Anaya's leg remained unstable as of December 2017. *Id.*

The Cardozas turned Daisy and Oden over to animal welfare sometime in January of 2017. The dogs were euthanized.

Ms. Anaya filed a Complaint for Personal Injury against Mr. and Mrs. Cardoza on May 4, 2018. *See* Exhibit 1. The Complaint for Personal Injury raised claims for negligence and strict liability and included a request for punitive damages. *Id.* A process server serves the Complaint for Personal Injury together with a Summons on Mr. and Mrs. Cardoza by leaving a copy of the Complaint and Summons with Mrs. Cardoza. *See* Exhibit 2-1 and 2-1.

On July 3, 2018, Ms. Anaya obtained a default judgment on her Complaint for Personal Injury against Mr. and Mrs. Cardoza for $25,000 plus attorney's fees of $500, and costs of $191.08. *See* Exhibit 5. On August 1, 2018, Ms. Anaya filed an Application for Writ of Garnishment to collect on the default judgment from Mr. Cardoza's wages, and on August 7, 2018, Ms. Anaya obtained a Writ of Garnishment. *See* Exhibits 6 and 7. A Notice of Right to Claim Exemptions from Execution was served on Mr. and Mrs. Cardoza on September 14, 2018. *See* Exhibit 8 and 9. Daughter completed and filed the Claim of Exemptions on Execution because the Cardozas mistakenly believed the Complaint for Personal Injury was filed against Daughter, not Mrs. Cardoza. *See* Exhibit 11.

Ms. Anaya testified that Mrs. Cardoza approached her one afternoon outside Ms. Anaya's driveway and offered to pay $5,000 to settle the Complaint for Personal Injury. Mrs. Cardoza denied that she ever spoke to Ms. Anaya about the lawsuit, or offered to settle the lawsuit for $5,000.

After visiting with an attorney and learning that it was likely too late to contest the default judgment, the Cardozas decided to file for bankruptcy protection. The Cardozas filed a voluntary petition under Chapter 7 of the Bankruptcy Code on October 26, 2018. They filed a

bankruptcy case because they do not have enough money to pay the judgment Ms. Anaya obtained against them. Ms. Anaya filed a Complaint to Determine Dischargeability of Debts on January 24, 2019.

Overall, Mrs. Cardoza believed the dogs were "pretty good dogs." Oden, the younger dog, was jumpy and liked to play and chase other dogs. Daisy liked to sleep a lot. Mrs. Cardoza never saw either dog attack anyone. Daughter never saw Daisy or Oden bite or attack anyone. She was not aware that the dogs killed a cat. Mr. Cardoza believed the dogs were good dogs. He never saw the dogs bite or attack anyone, though he was aware that the dogs would get out of the fenced yard from time to time. Neither Mr. or Mrs. Cardoza nor Daughter ever instructed Daisy and Oden to attack anyone.

## CONCLUSIONS OF LAW

Debts "for willful and malicious injury by the debtor to another entity or to the property of another entity" are non-dischargeable. 11 U.S.C. § 523(a)(6). Non-dischargeability under § 523(a)(6) requires proof of both the "willful" and "malicious" elements of the statute. *See Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004) ("Without proof of *both* [willful and malicious elements under 523(a)(6)], an objection to discharge under that section must fail."); *Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley)*, 235 B.R. 651, 655 (10th Cir. BAP 1999) ("In the Tenth Circuit, the phrase 'willful and malicious injury' has been interpreted as requiring proof of two distinct elements—that the injury was both 'willful' and 'malicious.'"); *Shirley v. Lopez (In re Lopez)*, 566 B.R. 255, 260 (Bankr. D.N.M. 2017) ("Section 523(a)(6) requires proof of both a 'willful act' and 'malicious injury.'") (citing *Moore*, 357 F.3d at 1129).

The "willful" component of § 523(a)(6) requires intent to injure. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). As the Supreme Court explained, "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Id*. A deliberate or intentional injury requires that the actor desired or intended that the resulting *consequences* of the act occur, not simply that the actor intentionally engaged in the act itself. 523 U.S. at 61-62. Typically, a non-dischargable debt under § 523(a)(6) "triggers in the lawyer's mind the category of 'intentional torts,' as distinguished from negligent or reckless torts." *Id.* at 62.

However, even absent direct evidence of a debtor's specific intent to injure, a creditor can satisfy the "willful" component by proving facts from which the Court may infer that the debtor undertook the act with the belief that the consequences of the act were substantially certain to occur. *See Bank of Commerce & Trust Co. v. Schupbach (In re Schupbach)*, 500 B.R. 22, 35–36 (Bankr. D. Kan. 2013) (Willful injury under § 523(a)(6) may be established "indirectly by evidence of . . . the debtor's knowledge that the conduct will cause particularized injury.") (quoting *Longley*, 235 B.R. at 657); *cf. Moore*, 357 F.3d at 1129 (citing cases that hold that the "willful" component is satisfied if the debtor believed that the consequences of the act are substantially certain to result from the action taken); *Shaw v. Osborne (In re Osborne)*, 604 B.R. 582, 591 (Bankr. M.D. Ga. 2019) (willfulness is shown if the debtor acted with the desire to cause the resulting harm, with knowledge that the injury would occur, or in the belief that harm was substantially certain to result) (citations omitted); *Burris v. Burris (In re Burris)*, 598 B.R. 315, 334 (Bankr. W.D. Okla. 2019) (The "willful" component requires that the debtor desired to cause injury or believed the injury was substantially certain to occur). The Court measures intent under the "willful" component using a subjective standard of the debtor's belief. *Burris,* 598

B.R. at 334 (citations omitted); *Utah Behavior Servs., Inc. v. Bringhurst (In re Bringhurst)*, 569 B.R. 814, 823 (Bankr. D. Utah 2017).

The "malicious" component of § 523(a)(6) requires the Court to examine the debtor's motives and any claimed justification or excuse for taking the action while desiring, knowing or intending that the action will cause the resulting harm. *See Door, Bentley & Pecha, CPA's, P.C. v. Pasek (In re Pasek)*, 983 F.2d 1524, 1527 (10th Cir. 1993) ("[T]he debtor's motives, including any claimed justification or excuse, must be examined to determine whether the requisite 'malice' in addition to 'willfulness' is present.") (citations omitted). The "malicious" component of § 523(a)(6) requires conduct more culpable than recklessness. *Sailor Music v. Walker (In re Walker)*, 514 B.R. 585, 589 (8th Cir. BAP 2014) ("Malice requires more than just reckless behavior by the debtor") (citation omitted).[2]

Ms. Anaya relies in part on *Zauper v. Lababit (In re Lababit)*, No. AP 07-01227, 2009 WL 7751426 (9th Cir. BAP 2009), in which the Ninth Circuit affirmed the bankruptcy court's non-dischargeability determination under § 523(a)(6) based on a dog attack that killed the plaintiff's cat. The *Lababit* court reasoned that because the debtors were aware of their dog's prior history, they also knew that injury to the plaintiff's cat was substantially certain to result if they failed to performed their duties to confine and control the dog. *Lababit*, 2009 WL 7751426 at * 5. The debtors' repeated failure to fulfill their duties, without justification or excuse, resulted in the death of plaintiffs' cat. *Id.* These factors satisfied both the "willful" and "malicious" requirements for non-dischargeability under § 523(a)(6). *Id.*

---

[2] *See also MarPad, L.L.C. v. Seevers (In re Seevers)*, 574 B.R. 832, 859 (Bankr. D. Neb. 2017) (same); *D'Angelo v. McKean (In re McKean)*, No. AP 12-6018, 2014 WL 184983, at *5 (Bankr. D. Kan. Jan. 15, 2014) ("Malicious conduct is more culpable than recklessness.") (citation omitted); *Deluxe Motor Co. Inc. v. Hardman (In re Hardman),* No. AP 10-2015, 2011 WL 5153868, at *4 (Bankr. D. Wyo. Oct. 28, 2011) ("Negligent or reckless acts do not suffice to establish that a resulting injury is willful and malicious.") (citation omitted).

The facts in *Lababit* are distinguishable from the facts present here. In *Lababit,* the debtors knew that their dog had killed at least one other cat. 2009 WL 7751426 at *5. They had trained their dog to fight, and knew that their dog had a propensity for aggression. *Id.* Here, the Cardozas never saw Daisy or Oden attack anyone and were not aware of any attack. They did not train their dogs to fight. They were not aware that Ms. Anaya believed one of their dogs killed her cat.

Further, the evidence fails to establish that the Cardozas acted with the requisite willful and malicious intent necessary to render the debt non-dischargeable under § 523(a)(6). True, the Cardozas failed to keep their dogs behind a secured fence, even after the mobile home park manager told them to keep the dogs in the backyard. The wire the Cardozas attached to the fence to keep it secure was woefully inadequate. The Cardozas also knew that animal welfare had issued a dangerous dog and irresponsible owner determination, yet they continued to let Daisy and Oden get out of the fence. Mr. Cardoza knew that he was required to obtain an insurance policy, yet he failed to do so. Nevertheless, even taken cumulatively, this evidence fails to establish that the Cardozas subjectively knew that their actions (or inactions) were substantially certain to result in Ms. Anaya's particularized injury. The Cardozas acted negligently, even with reckless indifference to whether Daisy and Oden might escape from their yard and act aggressively toward their neighbor. But negligent, reckless, or indifferent behavior does not meet the standard for willful and malicious conduct under § 523(a)(6). *Geiger*, 523 U.S. at 59 (holding that reckless or negligent conduct does not fall within the statutory exception to discharge under § 523(a)(6)); *Song v. Duncan (In re Duncan)*, 448 F.3d 725, 729 (4th Cir. 2006) ("Section 523(a)(6) is not satisfied by negligent, grossly negligent or reckless conduct.") (citation omitted).

The Cardozas did not intend to injure Ms. Anaya. Nor did the Cardozas act with the subjective belief that it was substantially certain Daisy would harm Ms. Anaya if Daisy got out of the Cardozas' fenced yard. Mr. and Mrs. Cardoza and Daughter were unaware of Daisy or Oden attacking or biting anyone. They were unaware that Ms. Anaya believed one of the Cardozas' and Daughter's dogs killed Ms. Anaya's cat. When animal welfare issued a dangerous dog/irresponsible owner determination, Daughter sought to appeal that decision. That determination was upheld when Daughter failed to appear at the appeal hearing. Under these circumstances, the Court does not infer that the Cardozas intended to harm Ms. Anaya or subjectively believed that the consequences of their failure to keep Daisy and Oden behind a secured fence were substantially certain to cause Ms. Anaya harm.

Finally, the Cardozas' violation of Angel's Law is insufficient to establish that the Cardozas acted with willful and malicious intent necessary to render the debt non-dischargeable under § 523(a)(6). The Albuquerque City Ordinance known as Angel's Law requires an owner of a dangerous dog to have an insurance policy with minimum coverage of $500,000 for injury caused by a dangerous dog, and requires dangerous dogs to be "confined on the property by a secure fence or secure facility." Albuquerque, N.M., Code § 9-17-5(C)(4) and (6) (Ord. 2-2005; Am. Ord 2016-009). The Cardozas failed to meet both of these requirements. Angel's Law also provides that

> [a] dog does not have to bite a person or animal to be deemed a dangerous dog under Angel's Law. If a dangerous dog causes harm, the owner is civilly liable as a matter of law and further shows that the owner knew or should have known of the propensity for harm.

Albuquerque, N.M., Code §9-17-5(A) (Ord. 2-2005; Am. Ord. 2016-009)

Angel's Law is a strict liability statute that imposes liability regardless of actual intent. A strict liability statute, like Angel's Law, does not satisfy the elements necessary to establish a willful

and malicious injury within the meaning of § 523(a)(6). *See Sterling v. Lanum (In re Lanum)*, 572 B.R. 917, 923 (Bankr. S.D. Iowa 2017) ("[T]he violation of a strict liability statute, without conduct akin to an intentional tort, is not sufficient to render a debt nondischargeable.") (quoting *Orr v. Marcella (In re Marcella)*, 463 B.R. 212, 220 (Bankr. D. Conn. 2011); *cf. Crestwood James, LLC v. Persechino (In re Persechino)*, 423 B.R. 1, 5 (Bankr. D. Conn. 2010) (liability under a dog-bite statute which "makes no reference to willfulness or maliciousness as elements to be plead or proven in establishing strict liability" is not entitled to collateral estoppel for non-dischargeability under § 523(a)(6)).

Thus, notwithstanding the Cardozas' violations of Angel's Law, the violations alone cannot establish willful and malicious intent. Willfulness and malicious injury under § 523(a)(6) requires, at a minimum, the subjective belief that the action is substantially certain to cause the particularized injury. *See Via Christi Regional Medical Center v. Englehart (In re Englehart)*, 229 F.3d 1163, 2000 WL 1275614, at *3 (10th Cir. Sept. 8, 2000) ("[T]he 'willful and malicious' injury exception to dischargeability in § 523(a)(6) turns on the state of mind of the debtor, who must have wished to cause injury or *at least* believed it was substantially certain to occur.") (emphasis added); *First Am. Title Ins. Co. v. Smith (In re Smith)*, No. AP 17-02076, 2019 WL 3026851, at *19 (Bankr. D. Utah July 10, 2019) (non-dischargeability under § 523(a)(6) requires a showing that "the Debtor subjectively believed that such [particularized] injury was substantially certain to occur . . . .") (citations omitted). The city ordinance's deemed knowledge that the Cardozas "knew or should have known" of Daisy's "propensity for harm" falls short of establishing that the Cardozas subjectively believed that Daisy was substantially certain to bite Ms. Anaya if the Cardozas failed to keep the gate secured and Daisy escaped from the Cardozas'

fenced yard. "When injury was 'neither desired nor in fact anticipated by the debtor,' it is outside the scope of the statute." *Englehart*, 2000 WL 1275614 at *3 (quoting *Geiger*, 523 U.S. at 62).

CONCLUSION

The evidence fails to satisfy the "willful and malicious" requirements for non-dischargeability under § 523(a)(6). Consequently, the debt represented by the default judgment obtained by Ms. Anaya against the Cardozas in the state court lawsuit is dischargeable in the Cardozas' bankruptcy case. The Court will enter a separate judgment consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: February 28, 2020

COPY TO:

Richard Rudy Marquez
Attorney for Plaintiff
1121 4th St. NW, Suite 1-A
Albuquerque, NM 87102

Michael Daniels
Attorney for Defendants
PO Box 1640
Albuquerque, NM 87103